KAMINSKI, Appellant,

v.

METAL & WIRE PRODUCTS COMPANY et al., Appellees.

[Cite as *Kaminski v. Metal & Wire Prods. Co.*, 175 Ohio App.3d 227, 2008-Ohio-1521.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 07–CO–15.

Decided March 18, 2008.

David A. Forrest and Jarrett J. Northup; and Dennis A. DiMartino, for appellant.

William E. Pfau III, for appellee.

DONOFRIO, Judge.

{¶ 1} Plaintiff-appellant, Rose Kaminski, appeals from a Columbiana County Common Pleas Court judgment granting summary judgment in favor of defendant-appellee, Metal & Wire Products Company.

{¶ 2} Appellant was employed as a press operator at appellee's Salem manufacturing facility. On June 30, 2005, appellant was working at her press when the press ran out of metal coil. She asked a co-worker, Toby Stivers, to operate the forklift to load a new coil into her press. Using the forklift, Stivers retrieved a metal coil and brought it to appellant's area. The coil weighed approximately 800 pounds and was two to three inches thick and four to five feet tall. In order to load the coil onto the press, Stivers had to switch the coil from the right fork of the forklift to the left fork. Using the forklift, Stivers set the coil upright on the ground to facilitate the transfer. Because the coil needed to be balanced and because the supervisor could not be found, appellant balanced the unstable coil while Stivers attempted to thread the left fork through the coil. The fork bumped the coil. The coil fell onto appellant's legs and feet, causing serious injury.

{¶ 3} Appellant subsequently filed a complaint against appellee. She alleged that appellee had acted with the intent to cause injury to its employee by requiring her to participate in the performance of a dangerous activity without proper safety systems, in violation of R.C. 2745.01. As part of her complaint, appellant asserted that R.C. 2745.01 is unconstitutional. R.C. 2745.01 provides the requirements for employer intentional tort. Appellant further asserted a claim against appellee for common-law employment intentional tort.

{¶ 4} Appellee filed a counterclaim for a declaratory judgment that R.C. 2745.01 is constitutional. While appellant did not serve the Ohio attorney general with her complaint alleging that R.C. 2745.01 is unconstitutional, appellee did serve the attorney general with a copy of its counterclaim.

{¶ 5} Next, appellee filed a motion for summary judgment on its counterclaim asking the court to find that R.C. 2745.01 is constitutional. Appellant then filed a

cross motion for summary judgment on the counterclaim asking the court to find that R.C. 2745.01 is unconstitutional.

{¶ 6} The trial court found the statute to be constitutional. It reasoned that it was required to afford the statute a presumption of constitutionality and that it could not find the statute to be clearly unconstitutional.

{¶ 7} After the trial court's ruling that R.C. 2745.01 is constitutional, appellee moved for summary judgment on appellant's complaint. Appellee alleged that appellant could point to no evidence that it had an intent to injure her, nor could she point to any evidence that it had acted with the belief that injury was likely to occur. The trial court agreed with appellee and granted summary judgment in its favor.

{¶ 8} Appellant filed a timely notice of appeal on May 9, 2007.

{¶ 9} Appellant raises two assignments of error, the first of which states:

{¶ 10} "The trial court erred in declaring R.C. § 2745.01 to be constitutional."

{¶ 11} The latest version of R.C. 2745.01 became effective on April 7, 2005. It provides:

{¶ 12} "(A) In an action brought against an employer by an employee, * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

{¶ 13} "(B) As used in this section, 'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death."

{¶ 14} Thus, R.C. 2745.01 codifies the common-law employer intentional tort and makes its remedy an employee's sole recourse for an employer intentional tort.

{¶ 15} Prior to the current version of R.C. 2745.01, the legislature has previously attempted to codify the common-law employer intentional tort. In 1986, the General Assembly enacted former R.C. 4121.80.[1] Under former R.C.

---

1. {¶ a} Former R.C. 4121.80 provided:

{¶ b} "(A) If injury, occupational disease, or death results to any employee from the intentional tort of his employer, the employee or the dependents of a deceased employee have the right to receive workers' compensation benefits under Chapter 4123. of the Revised Code and have a cause of action against the employer for an excess of damages over the amount received or receivable under Chapter 4123. of the Revised Code and Section 35 of Article II, Ohio Constitution, or any benefit or amount, the cost of which has been provided or wholly paid for by the employer.

4121.80, injuries resulting from employer intentional tort fell under the realm of workers' compensation and allowed the injured employee to seek excess damages. It was intended to govern actions alleging intentional torts committed by employers against their employees. *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 136, 522 N.E.2d 477. The legislature enacted former R.C. 4121.80 in response to the Ohio Supreme Court's decisions allowing employees to assert actions in common law against employers for intentional torts. See *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, and *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046. However, the Ohio Supreme Court found former R.C. 4121.80 unconstitutional because it exceeded and conflicted with the legislative authority granted to the General Assembly. *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, at paragraph two of the syllabus.

{¶ 16} Subsequently, the General Assembly enacted R.C. 2745.01.[2] The Ohio Supreme Court then found this statute to be unconstitutional. *Johnson v. BP Chems., Inc.* (1999), 85 Ohio St.3d 298, 308, 707 N.E.2d 1107. It reasoned that "[b]ecause R.C. 2745.01 imposes excessive standards (deliberate and intentional act), with a heightened burden of proof (clear and convincing evidence), it is

---

{¶ c} " * * *

{¶ d} "(G) As used in this section:

{¶ e} "(1) 'Intentional tort' is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.

{¶ f} "Deliberate removal by the employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance is evidence, the presumption of which may be rebutted, of an action committed with the intent to injure another if injury or an occupational disease or condition occurs as a direct result.

{¶ g} " 'Substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death."

2. As stated by the Ohio Supreme Court in *Johnson v. BP Chems., Inc.* (1999), 85 Ohio St.3d 298, 306, 707 N.E.2d 1107: "R.C. 2745.01(A) provides that an employer is not generally subject to liability for damages at common law or by statute for an intentional tort that occurs during the course of employment, but that an employer is subject to liability only for an 'employment intentional tort' as defined. 'Employment intentional tort' is defined in R.C. 2745.01(D)(1) as 'an act committed by an employer in which the employer *deliberately and intentionally* injures, causes an occupational disease of, or causes the death of an employee.' (Emphasis added.) Further, R.C. 2745.01(B) states that employees or the dependent survivors of deceased employees who allege an intentional tort must demonstrate 'by *clear and convincing* evidence that the employer deliberately committed all of the elements of an employment intentional tort.' (Emphasis added.) This standard of clear and convincing evidence also applies to a response by the employee or the employee's representative to an employer's motion for summary judgment. R.C. 2745.01(C)(1). In addition, the statute requires that 'every pleading, motion, or other paper' be signed by the attorney of record or, if the party is not represented by an attorney, by the party. R.C. 2745.01(C)(2). And, if the requirements of R.C. 2745.01(C)(2) are not complied with, the court shall impose 'an appropriate sanction.' Id. The sanction may include, but is not limited to, reasonable expenses incurred by the other party, including reasonable attorney fees. Id."

clearly not 'a law that furthers the " * * * comfort, health, safety and general welfare of all employe[e]s." ' " Id., quoting *Brady,* 61 Ohio St.3d at 633, 576 N.E.2d 722, quoting Section 34, Article II of the Ohio Constitution.

{¶ 17} Consequently, the General Assembly amended R.C. 2745.01. Appellant now alleges that this current version of R.C. 2745.01 is unconstitutional.

{¶ 18} All legislative enactments enjoy a presumption of constitutionality. *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224; *Benevolent Assn. v. Parma* (1980), 61 Ohio St.2d 375, 377, 15 O.O.3d 450, 402 N.E.2d 519. Furthermore, courts must apply all presumptions and pertinent rules of construction to uphold, if at all possible, a statute alleged to be unconstitutional. *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 330 N.E.2d 896. Thus, we must begin our analysis with the presumption that R.C. 2745.01 is constitutional.

{¶ 19} Appellant specifically takes issue with the phrase "substantially certain" and its application in the statute. The statute defines "substantially certain" as acting with "deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." Appellant argues that the Ohio Supreme Court has rejected such a definition.

{¶ 20} Appellant is correct. The Ohio Supreme Court has rejected a similar definition of "substantially certain." See *Jones,* 15 Ohio St.3d at 95, 15 OBR 246, 472 N.E.2d 1046. However, the legislature can change the common law by legislation as long as it acts within constitutional limitations. *Johnson,* 85 Ohio St.3d at 303, 707 N.E.2d 1107. Thus, the fact that the Supreme Court has previously rejected a similar definition of substantial certainty is not a reason, in and of itself, to find R.C. 2745.01 unconstitutional.

{¶ 21} Appellant next argues that R.C. 2745.01 conflicts with and exceeds the legislative authority granted to the General Assembly pursuant to Sections 34 and 35, Article II of the Ohio Constitution. She asserts that the Ohio Supreme Court has repeatedly held that the General Assembly does not have the power under Sections 34 and 35 to codify the common-law employer intentional tort because it necessarily occurs outside of the employment relationship and does not further the comfort, health, safety, and general welfare of employees.

{¶ 22} Section 34, Article II of the Ohio Constitution provides: "Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the constitution shall impair or limit this power." Section 35, Article II provides the General Assembly with the power to pass laws establishing a state workers' compensation fund "[f]or the purpose of providing

compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment."

{¶ 23} In *Brady,* 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph two of the syllabus, the Ohio Supreme Court held that R.C. 2745.01's predecessor, former R.C. 4121.80, exceeded and conflicted with the legislative authority granted to the General Assembly pursuant to Sections 34 and 35, Article II of the Ohio Constitution and was unconstitutional. However, the court's reasoning on the subject was only a plurality decision. In determining that former R.C. 4121.80 violated Section 34, Justice Sweeney, writing for the plurality, reasoned that "[a] legislative enactment that attempts to remove a right to a remedy under common law that would otherwise benefit the employee cannot be held to be a law that furthers the ' * * * comfort, health, safety and general welfare of all employe[e]s * * *.' " Id. at 633, 576 N.E.2d 722 (Justices Douglas and Resnick concurring). In finding that the statute violated Section 35, Justice Sweeney wrote that former R.C. 4121.80 attempted to circumvent the purposes of Section 35 and that "the legislature cannot, consistent with Section 35, Article II, enact legislation governing intentional torts that occur within the employment relationship, because such intentional tortious conduct will always take place outside that relationship." Id. at 634, 576 N.E.2d 722.

{¶ 24} Later, when dealing with the constitutionality of the prior version of R.C. 2745.01, the Ohio Supreme Court relied on the plurality's reasoning in *Brady.* The court stressed that *any* statute the General Assembly enacted that limited employers' liability for their intentional tortious acts would violate the Ohio Constitution:

{¶ 25} "In *Brady,* the court invalidated former R.C. 4121.80 in its entirety, and, in doing so, we thought that we had made it abundantly clear that *any statute created to provide employers with immunity from liability for their intentional tortious conduct cannot withstand constitutional scrutiny.* See, also, *State ex rel. Ohio AFL–CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 230, 631 N.E.2d 582, 587. Notwithstanding, the General Assembly has enacted R.C. 2745.01, and, again, seeks to cloak employers with immunity. In this regard, we can only assume that the General Assembly has either failed to grasp the import of our holdings in *Brady* or that the General Assembly has simply elected to willfully disregard that decision. In any event, we will state again our holdings in *Brady* and hopefully put to rest any confusion that seems to exist with the General Assembly in this area." (Emphasis added.) *Johnson,* 85 Ohio St.3d at 304, 707 N.E.2d 1107.

{¶ 26} The *Johnson* court reasoned that "the constitutional impediments at issue in *Brady,* concerning former R.C. 4121.80, also apply with equal force to R.C. 2745.01" because "[b]oth statutes were enacted to serve identical purposes,"

those purposes being "to provide immunity for employers from civil liability for employee injuries, disease, or death caused by the intentional tortious conduct of employers in the workplace." Id. at 305, 707 N.E.2d 1107.

{¶ 27} The *Johnson* court further explained that given the standard of proof required by the statute that the employer's conduct was both deliberate and intentional, the employee would have to prove, at a minimum, that the employer was guilty of criminal assault. Id. at 306, 707 N.E.2d 1107. The court found that by setting such a standard, "the General Assembly has created a cause of action that is simply illusory." Id.

{¶ 28} Given the court's past holdings regarding R.C. 2745.01's predecessors, it is reasonable to conclude that the General Assembly's latest attempt at codifying employer intentional tort is unconstitutional as well. The Ohio Supreme Court has made it abundantly clear that any statute that codifies the common-law employer intentional tort and attempts to limit employers' liability for such intentional torts is unconstitutional under both Sections 34 and 35, Article II of the Ohio Constitution.

{¶ 29} R.C. 2745.01, as currently written, is similar to the earlier version found by the *Johnson* court to be unconstitutional. R.C. 2745.01(A) provides that in an employer intentional tort action, the employee must prove "that the employer committed the tortious act *with the intent to injure another or with the belief that the injury was substantially certain to occur.*" (Emphasis added.) Thus, pursuant to section A, in order to succeed on the claim, the employee must prove one of two things: (1) the employer acted with intent to injure or (2) the employer acted with the belief that injury was substantially certain to occur. This leads one to believe that there are two alternate ways for an employee to succeed on an intentional tort claim against an employer. However, we must consider the rest of the statute.

{¶ 30} "Intent to injure" is clear and, therefore, is not defined in the statute. "Substantially certain," however, is not as clear. Therefore, the legislature provided a definition. R.C. 2745.01(B) defines "substantially certain" as acting "with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death."

{¶ 31} When we consider the definition of "substantial certainty," it becomes apparent that an employee does not have two ways to prove an intentional tort claim as R.C. 2745.01(A) suggests. The employee's two options of proof become: (1) the employer acted with intent to injure or (2) the employer acted with deliberate intent to injure. Thus, under R.C. 2745.01, the only way an employee can recover is if the employer acted with the intent to cause injury. The *Johnson* court held that this type of action was simply illusory:

{¶ 32} "Under the definitional requirements contained in the statute, an employer's conduct, in order to create civil liability, must be both *deliberate* and *intentional*. Therefore, in order to prove an intentional tort * * * the employee, or his or her survivors, must prove, at a minimum, that the actions of the employer amount to criminal assault. In fact, given the elements imposed by the statute, it is even conceivable that an employer might actually be guilty of a criminal assault but exempt from civil liability under [former] R.C. 2745.01(D)(1)." *Johnson,* 85 Ohio St.3d at 306–307, 707 N.E.2d 1107.

{¶ 33} Furthermore, the Ohio Supreme Court has explicitly held that a specific intent to injure is *not* necessary to a finding of intentional misconduct. *Jones,* 15 Ohio St.3d at 95, 472 N.E.2d 1046.

{¶ 34} Pursuant to the Ohio Supreme Court's holdings in *Brady,* supra, and *Johnson,* supra, and consistent with Sections 34 and 35, Article II of the Ohio Constitution, we must conclude that R.C. 2745.01 is unconstitutional. Because of its excessive standard of requiring proof that the employer intended to cause injury, "it is clearly not 'a law that furthers the " * * * comfort, health, safety and general welfare of all employe[e]s." ' " *Johnson,* 85 Ohio St.3d at 308, 707 N.E.2d 1107, quoting *Brady,* 61 Ohio St.3d at 633, 576 N.E.2d 722, quoting Section 34, Article II of the Ohio Constitution. Additionally, "because R.C. 2745.01 is an attempt by the General Assembly to govern intentional torts that occur within the employment relationship, R.C. 2745.01 'cannot logically withstand constitutional scrutiny, inasmuch as it attempts to regulate an area that is beyond the reach of constitutional empowerment.' " Id., quoting *Brady,* 61 Ohio St.3d at 634, 576 N.E.2d 722.

{¶ 35} Appellant next argues that we must apply the principle of stare decisis in this situation. She asserts that the applications of employer intentional tort cannot be in a constant state of flux. Appellant contends that by holding R.C. 2745.01 unconstitutional, we will be applying and upholding the Ohio Supreme Court's past decisions on the matter.

{¶ 36} As stated above, we began this analysis with the presumption that R.C. 2745.01 is constitutional. However, by interpreting and applying the Ohio Supreme Court's past holdings dealing with similar statutes and the Ohio Constitution, we must reach the conclusion that R.C. 2745.01 is unconstitutional.

{¶ 37} Finally, appellant argues that R.C. 2745.01 violates the Due Process Clause found in Article I, Section 16 of the Ohio Constitution. She contends that R.C. 2745.01 removes the right of injured employees to seek redress for the intentional torts of their employers. Therefore, appellant asserts, it does not bear a real and substantial relationship to the public health, safety, morals, or general welfare.

{¶ 38} Because R.C. 2745.01 is unconstitutional based on Sections 34 and 35, Article II of the Ohio Constitution, further analysis here is unnecessary. See *Johnson*, 85 Ohio St.3d 298, 707 N.E.2d 1107, at fn. 14 (It is unnecessary to elaborate on other constitutional issues given the court's holding that R.C. 2745.01 exceeded the limits of legislative power under the Ohio Constitution).

{¶ 39} Accordingly, appellant's first assignment of error has merit.

{¶ 40} Appellant's second assignment of error states:

{¶ 41} "The trial court erred in granting defendant's motion for summary judgment under R.C. § 2745.01 as genuine issues of material fact remain to be litigated."

{¶ 42} Here, appellant argues that even if this court upholds R.C. 2745.01, summary judgment was improper because genuine issues of material fact are at issue.

{¶ 43} Appellant asserts that the evidence demonstrates that appellee was repeatedly warned of the inherent danger to its employees regarding its process of handling the heavy metal coils. In fact, she states that appellee was fined by the Occupational Safety and Health Administration ("OSHA") for a violation in connection with her injury. Appellant contends that despite its alleged knowledge of this known danger, appellee did not make any attempt to formally train its employees in how to properly load the coils onto the presses. She further asserts that appellee considered safer alternatives for loading the coils. However, on the basis of cost, appellee decided to use the more dangerous process. This evidence, appellee argues, satisfies the requirement that appellee had the belief that an injury was substantially certain to occur. Furthermore, she contends that appellee's deliberate decision to subject its employees to a known danger, despite its knowledge of a substantial certainty of injury, rises to the level of deliberate intent to cause injury to an employee.

{¶ 44} Additionally, appellant argues that the trial court failed to consider the evidence in the light most favorable to her, the nonmoving party, as it was required to do. She contends that the trial court relied on an undocumented and nonbinding company policy of using a supervisor to load the coils into the press to characterize her assistance in loading the coil as voluntary and contrary to company policy. However, appellant argues that the evidence demonstrated that any employee who passed a written forklift test, not just a supervisor, could operate the forklift in order to load a coil into a press. Thus, appellant contends that the company "policy" that the trial court relied on is "at best, a non-mandatory practice" utilized by appellee, a practice that is often not possible to follow when a supervisor is not present on the plant floor, as was the case here.

{¶ 45} In response, appellee argues that the record supports summary judgment in its favor, even if this court finds that R.C. 2745.01 is unconstitutional and we apply the common-law test for employer intentional tort set out in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108.

{¶ 46} In *Fyffe*, the Ohio Supreme Court set out the controlling test for employer intentional tort as follows:

{¶ 47} "[I]n order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)" Id. at paragraph one of the syllabus.

{¶ 48} Appellee argues that while there was some inherent danger in loading the coils, there was no evidence that it had knowledge that injury was substantially certain to occur or that it required appellant to perform the task of assisting with loading the coils. It points to appellant's deposition testimony, in which she admitted that she was supposed to find a supervisor to load the coil. Appellee argues that an employee who voluntarily undertakes a risk cannot maintain an employer intentional tort action. Additionally, appellee asserts that the set of circumstances that created the danger as perceived by appellant's expert was unique to this situation. Finally, appellee contends that while handling coils is generally dangerous, it is simply an inherently dangerous part of the work, a danger that can be avoided by paying attention and using reasonable care.

{¶ 49} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can conclude only that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt,*

*Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 50} Since R.C. 2745.01 is unconstitutional, we must analyze appellant's claim under the common-law test for employer intentional tort set out in *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, and stated above.

{¶ 51} There seems to be no dispute surrounding the facts preceding appellant's injury. Appellant was working the night shift, operating her press, when it ran out of coil. She looked for her supervisor, David Bellinger, so that he could load another coil into her press. However, she was unable to find him. Appellant then asked a co-worker, Toby Stivers, to load the coil for her. She asked Stivers because he was licensed by appellee to operate the forklift, which was required in order to load the coil. Stivers had changed coils on his press many times. When Stivers brought the coil to appellant's press, he needed to switch the coil from one fork to the other fork to load it into the press. In order to do this, Stivers had to set the coil down. Someone had to balance the coil while Stivers switched it to the other fork. Appellant accepted this job. While appellant was balancing the coil, it fell onto her foot and leg.

{¶ 52} There also is no dispute that the metal coil appellant was attempting to balance weighed approximately 800 pounds and was four to five feet tall and only two to three inches thick. Thus, it was very unstable when stood upright.

{¶ 53} The issue that arises here is whether appellee required its employees to engage in this method of loading and balancing coils with the knowledge that this method was dangerous and with the knowledge that by requiring employees to use this method, it was substantially certain that someone would be injured. Thus, we must determine whether appellant presented evidence going to each of the three *Fyffe* elements.

{¶ 54} First, appellant had to demonstrate that a genuine issue of material fact existed as to whether appellee possessed knowledge of a dangerous process or procedure within its business operations. In order to do so, appellant had to demonstrate that (1) a dangerous condition existed within appellee's business operations and (2) appellee had actual or constructive knowledge that the dangerous condition existed. *Moore v. Ohio Valley Coal Co.*, 7th Dist. No. 05–BE–3, 2007-Ohio-1123, 2007 WL 755386, at ¶ 26. Appellant met this element.

{¶ 55} Bellinger, appellant's supervisor, testified that he had seen coils similar to the one appellant was holding tip over while an employee was holding them. He stated that he had witnessed this two or three times. However, on those occasions, the person holding the coil was able to get out of the way, and Bellinger said that they were lucky to have gotten out of the way. He further

stated that the narrow coils, like the one appellant was holding, were at risk of becoming unbalanced, and this created a dangerous condition when an employee was holding them. He considered the practice of balancing the narrow coils to be unsafe.

{¶ 56} Additionally, Bill Frederick, a former supervisor at appellee's plant, testified that on two or three occasions, coils that he was holding tipped over. However, he stated that he was lucky enough to have gotten out of the way. Two to three times a year, he also witnessed coils falling while an employee was holding them. And Frederick complained to his supervisors that appellee's method of loading coils was unsafe.

{¶ 57} In addition, OSHA had issued a citation to appellee resulting from appellant's injury. The citation stated, "[T]he load of steel coil being handled by a forklift, was not properly stable, secured or safely arranged."

{¶ 58} This court has observed:

{¶ 59} "The mere fact that defendant's process involved the existence of dangers does not automatically classify defendant's acts or omissions as an intentional tort, even if management failed to take corrective actions or institute safety measures. *Shelton v. U.S. Steel Corp.* (S.D.Ohio, 1989), 710 F.Supp. 206, 210. Some dangers may 'fairly be viewed as a fact of life of industrial employment' and an employer has not committed an intentional tort when an employee is injured by one of those dangers. *Van Fossen v. Babcock & Wilcox Co.* (1989) [1988], 36 Ohio St.3d 100, 116, 522 N.E.2d 489. A dangerous condition exists when the danger 'falls outside the "natural hazards of employment," which one assumes have been taken into consideration by employers when promulgating safety regulations and procedures.' *Youngbird v. Whirlpool Corp.* (1994), 99 Ohio App.3d 740, 747, 651 N.E.2d 1314." *Hubert v. Al Hissom Roofing & Constr., Inc.,* 7th Dist. No. 05–CO–21, 2006-Ohio-751, 2006 WL 389630, at ¶ 19.

{¶ 60} But here, two supervisors testified that on more than one occasion, they had seen the large coils fall over when an employee was balancing them. They both considered the employees who were balancing the coils at the time lucky to have gotten out of the way. Bellinger stated that balancing a coil created a dangerous condition. And Frederick complained to his supervisors that appellee's method of loading the coils was unsafe. This evidence shows that appellee, through its supervisors, knew of the unsafe method used to balance the unsteady coils.

{¶ 61} This evidence also creates a genuine issue of material fact as to whether the method used to balance the coils was dangerous to the point of falling outside the natural hazards of employment. The Fourth District has noted that operating dangerous machinery may be a necessary incident of an employment situa-

tion, thus not permitting an injured employee to recover in intentional tort for injuries suffered. *Goodin v. Columbia Gas of Ohio, Inc.* (2000), 141 Ohio App.3d 207, 216, 750 N.E.2d 1122. Yet operating the same dangerous machinery without proper safety mechanisms in place may not constitute a necessary incident of the employment, thus permitting recovery for intentional tort. Id. In the present case, changing the heavy, unstable coils was a necessary part of appellant's employment. However, whether changing the coils by requiring a single employee to balance the coil was a necessary part of appellant's employment is a question of fact.

{¶ 62} Second, appellant had to present evidence creating a genuine issue of material fact as to whether appellee possessed knowledge that if an employee was subjected to the dangerous process or procedure, then harm to the employee was a substantial certainty. The *Fyffe* court set out the requisite intent for an employer intentional tort. It held that the employer's intent must be more than negligence or recklessness. *Fyffe,* 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraph two of the syllabus. Instead, the requisite intent is present when the employer knows that injuries to employees are certain or substantially certain to occur and the employer nonetheless proceeds with the process, procedure, or condition. Id. "Mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." Id. This is a difficult standard to meet.

{¶ 63} Certain facts and circumstances are particularly relevant in attempting to prove that an employer had knowledge of a high probability of harm, including prior accidents of a similar nature, inadequate training, and whether the employer has deliberately removed or deliberately failed to install safety features. *Moore,* 7th Dist. No. 05–BE–3, 2007-Ohio-1123, 2007 WL 755386, at ¶ 37.

{¶ 64} The evidence as to this second *Fyffe* element is as follows.

{¶ 65} Bellinger testified that on two or three occasions, he had seen coils similar to the one appellant was holding tip over while an employee was holding them. He further stated that the narrow coils, like the one appellant was holding, were at risk of becoming unbalanced and created a dangerous, unsafe condition when they were being held. Yet Bellinger stated that he did not believe that it was certain that someone would be hurt balancing a coil.

{¶ 66} And Frederick testified that on two or three occasions, coils that he was holding tipped over. However, he stated that he was lucky enough to get out of the way. Two to three times a year, he also witnessed coils falling while an employee was holding them.

{¶ 67} Frederick even complained to Kevin Ehrenberg, the Salem plant manager, that appellee's method of balancing coils was unsafe. In fact, Frederick

showed Ehrenberg specific safety equipment in a catalog and explained that using this equipment would be safer. However, Ehrenberg told Frederick that appellee would not pay for that expense.

{¶ 68} Frederick stated that he told no fewer than three supervisors that the coil-loading method that appellee was using was dangerous and that someone was going to get hurt. He specifically told them that the coils were unsteady and that they could tip over. Frederick stated that the supervisors already knew this. However, nothing came of his complaints.

{¶ 69} Additionally, Stivers, Bellinger, and Frederick all testified that appellee had never trained employees in the proper way to change or balance a coil.

{¶ 70} Furthermore, appellant's expert in material handling, Walter Girardi, issued a report concerning appellant's injury and appellee's method of loading coils. He opined that appellee's method of loading coils was "very dangerous." He also stated that the danger was apparent to anyone who watched the process. Girardi stated that harm to employees was substantially certain to occur.

{¶ 71} "An expert report stating that the accident was substantially certain to occur may not be sufficient to prevent summary judgment in favor of the employer on the employee's intentional tort claim." *Burgos v. Areway, Inc.* (1996), 114 Ohio App.3d 380, 384, 683 N.E.2d 345. However, here we are faced with more than just an expert report.

{¶ 72} In addition to the expert's opinion that harm to employees was substantially certain to occur, we also have testimony that on numerous occasions, heavy, unstable coils, like the one appellant was holding, fell over while being balanced by an employee. And two supervisors testified that the employees holding those coils were lucky to escape injury. Furthermore, the evidence demonstrates that appellee never trained its employees in the dangerous task of balancing coils. Significantly, Frederick brought this safety issue to the plant manager's attention and informed him of what equipment to purchase in order to make the coil balancing safer. However, he was told that appellee would not pay to purchase the needed safety equipment. And Frederick told at least three supervisors that someone was going to get hurt using appellee's method of balancing coils. When viewing this evidence in the light most favorable to appellant, as we are required to do, a genuine issue of material fact exists as to whether appellee possessed knowledge that if an employee was subjected to the process of coil balancing, then harm to the employee would be a substantial certainty.

{¶ 73} Third, appellant had to present evidence creating a genuine issue of material fact as to whether appellee, despite its knowledge of the dangerous process and the substantial certainty of harm to its employees, continued to require the employee to perform the dangerous task. In order to survive a

summary judgment motion, the employee need not demonstrate that the employer ordered the employee to engage in the dangerous task. *Moore*, 7th Dist. No. 05–BE–3, 2007-Ohio-1123, 2007 WL 755386, at ¶ 49. Instead, the employee may satisfy this element by producing " 'evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task.' " Id., quoting *Gibson v. Drainage Prods., Inc.*, 95 Ohio St.3d 171, 2002-Ohio-2008, 766 N.E.2d 982, at ¶ 24.

{¶ 74} The evidence as to this element is as follows.

{¶ 75} Appellant testified that when her machine ran out of coil, she first looked for Bellinger, because employees were supposed to have the supervisor load the new coils. Appellant stated that on those occasions when she was able to locate Bellinger, Bellinger would operate the forklift and load the coil for her. However, she was not always able to find him. On these occasions, appellant would ask a fellow employee to operate the forklift and load the coil for her. Various people at the plant were licensed by appellee to operate the forklifts. Depending on where the coil was located in the plant, the forklift operator might have to retrieve the coil on one fork and then switch it to the other fork in order to get it into position to be loaded into the press. If this was the case, then a second person was required to balance the coil on the floor while the forklift operator put the coil down and switched it to the other fork. Appellant stated that she had previously balanced coils a couple of times before the night she was injured.

{¶ 76} Stivers testified that he was licensed by appellee to operate a forklift. He stated that he frequently operated the forklift and changed his own coils, as well as other employees' coils. He had changed appellant's coils in the past.

{¶ 77} Stivers stated that he told appellant that he had to move the coil from the right fork to the left fork and that he was going to look for Bellinger to help him. The reason Stivers was going to do this was not because he was following a rule that said he had to get the supervisor. Instead, it was because appellant is a small woman. However, appellant told Stivers that she could hold the coil.

{¶ 78} Stivers stated that Bellinger should have been the one to change the coil because he was the supervisor. However, Stivers testified that he did not look for Bellinger to help, because he suspected that Bellinger had been drinking. Several employees, including appellant and Stivers, testified that Bellinger was sometimes hard to find because he may have been drinking on the job.

{¶ 79} Importantly, Stivers also testified that there was no rule that an employee had to get the supervisor to help change a coil. In fact, he stated that any employee who was at a press usually held the coil if it needed to be switched

from one fork to the other. He further stated that supervisors had observed him changing coils in the past and had never told him that he was doing it wrong.

{¶ 80} Bellinger also testified that any employee who was licensed by appellee, not necessarily a supervisor, could operate the forklift and change coils. In fact, he stated that he, as a supervisor, was not required to be present to help load all coils. Bellinger further testified that any employee who was free to do it balanced the coils. He stated that the responsibility was not assigned to anyone in particular. Instead, whoever was available was required to do the balancing.

{¶ 81} Additionally, Frederick stated that it was necessary every day for employees to hold coils steady while the forklift operator got the fork through them. Frederick stated that all of the employees were required to hold the unstable coils.

{¶ 82} Donald Hardy, a die setter/press operator and assistant supervisor with appellee, testified that there was no policy that a supervisor was required to load the coils. In fact, he stated that he frequently loaded coils. Hardy further stated that appellant, just like any other employee, could be used to hold a coil. It was simply part of the job.

{¶ 83} Given this evidence, a genuine issue of material fact exists as to whether appellee required appellant to balance the coil. There is an indication that appellant and/or Stivers could have decided to wait until they located Bellinger so that he could balance the coil. And Stivers testified that appellant volunteered to balance the coil. But the evidence also demonstrates that all employees, including appellant, were required to balance coils. It was a part of the job of being a press operator. And appellant had balanced several coils previously. Additionally, while the trial court found that there was a policy requiring a supervisor to be present when loading a coil into a press, the opposite is true. While the various witnesses seemed to suggest that having a supervisor present during coil loading was the ideal situation, this practice was seldom used. Stivers and Hardy, nonsupervisors, changed many coils. Given this conflicting evidence, a genuine issue of material fact does exist.

{¶ 84} Because genuine issues of material fact exist as to all three *Fyffe* elements, summary judgment was not warranted. It should be mentioned, however, that the trial court applied R.C. 2745.01's more stringent test for intentional torts. The trial court concluded that appellee did not act with the intent to injure appellant or with the deliberate intent to cause her injury. Thus, the trial court did not actually consider whether appellee acted with substantial certainty that injury to its employee would occur. Accordingly, appellant's second assignment of error has merit.

{¶ 85} For the reasons stated above, the trial court's judgment is hereby reversed, and the matter is remanded for further proceedings pursuant to law and consistent with this opinion.

Judgment reversed
and cause remanded.

DeGenaro, P.J., and Vukovich, J., concur.