[Cite as *Haddox v. Cent. Ohio Transit Auth.*, 2023-Ohio-321.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Steven Haddox et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 21AP-539 |
| v. | : | (C.P.C. No. 20CV-4315) |
| Central Ohio Transit Authority et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

---

D E C I S I O N

Rendered on February 2, 2023

---

**On brief:** *The Law Office of Wright & Assoc., LLC,* and *Benjamin W. Wright,* for appellant. **Argued:** *Benjamin W. Wright.*

**On brief:** *Central Ohio Transit Authority, Theodore Klecker,* and *Aracely Tagliaventi,* for appellee. **Argued:** *Theodore L. Klecker.*

---

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiff-appellant, Steven Haddox, appeals from the decision of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Central Ohio Transit Authority ("COTA"), on his intentional tort claim under R.C. 2745.01. No evidence in the record showed that COTA deliberately intended to harm Mr. Haddox after he was injured from a fall after attempting to sit in a broken office chair. Accordingly, the trial court properly granted summary in favor of COTA.

## I. Facts and Procedural Background

{¶ 2} Mr. Haddox is a mechanic who had worked at COTA for seven years. (Oct. 9, 2020 Haddox Dep. at 13-14.) On July 2, 2019, the vehicle maintenance supervisor, Harvey

Richardson, asked him to come into his office to pick up bolts needed for a bus repair. *Id*. at 19. In Mr. Haddox's estimation, mechanics would go to Mr. Richardson's office "three to four times a day" to pick up parts and receive job assignments. *Id*. at 20. When he entered, co-worker Brian Carter was in the office for a job assignment. *Id*. at 19.

**{¶ 3}** Mr. Carter asked Mr. Haddox to sit down in an empty chair.[1] *Id*. at 35. Mr. Carter described the offer as "a joke" that "[e]veryone acknowledged:" "I made a joke that Steve should sit down since he was older than me." (Nov. 24, 2020 Carter Aff. at ¶ 6.) The chair was "an office chair that had wheels on the bottom of it" and had no observable defects. (Haddox Dep. at 30-31.) Mr. Haddox "grabbed" the chair and "pulled it out and sat down" in it. *Id*. at 31. While sitting down, the chair "flew out from behind" him and he "tried to grab" Mr. Richardson's desk as he fell, injuring his arm. *Id*. at 32. As a result of the injury, he filed a workers' compensation claim. *Id*. at 46-47.

**{¶ 4}** Mr. Richardson "kept asking" if Mr. Haddox was okay and appeared "pretty upset" about the incident. *Id*. at 32-33. He insisted that Mr. Haddox report the injury, even though Mr. Haddox initially believed that he had "just pulled a muscle." *Id*. at 33. Mr. Richardson said that he had "told them to throw that damn chair away, because it had a broken wheel on it." *Id*. at 33-34. He then "immediately rolled it out of the office and took it and threw it away." *Id*. at 34. Mr. Carter told Mr. Haddox that he "didn't realize that [the chair] was broken" and that he "felt bad" about offering it to him. *Id*. at 35.

**{¶ 5}** Mr. Haddox subsequently discovered that two other employees had fallen out of the same chair in the preceding days. *Id*. at 41. When asked if he thought that any COTA employee had "deliberately intended" to injury him, Mr. Haddox replied: "I do not believe that anybody would try to hurt me."[2] *Id*. at 38. Mr. Haddox said there was no prank culture

---

[1] Mr. Haddox initially testified that he was asked to sit in a chair in the office but could not remember if Mr. Richardson or Mr. Carter had made the request. (*Compare* Oct. 9, 2020 Haddox Dep. at 19 (stating that Mr. Richardson "said -- I think the phone rang or something. I can't remember. He said go ahead and sit down") *with id*. at 26 ("Brian Carter was in there. He may have said, Steve, go ahead and sit down").) Mr. Carter confirmed that he asked Mr. Haddox to sit in the chair while allowing for the possibility that Mr. Richardson also "may have indicated Steve should sit." (Nov. 24, 2020 Carter Aff. at ¶ 6.)

[2] Mr. Haddox provided several supplemental answers to other questions about COTA's "intent," but did not amend his statement that he did "not believe that anybody would try to hurt me." (Haddox Dep. at 38.) For example, one supplemental answer states: "While I do not know who put the chair in the office, somebody had to make the decision to put or keep the chair in the office. As such, it was not an 'accident.' * * * Somebody had to act 'intentionally' to put the chair in the office." (Nov. 16, 2020 Errata Sheet.)

at COTA apart from when mechanics had "switched somebody's sockets around" in each of their toolboxes. *Id.* at 39.

**{¶ 6}** On June 30, 2019, Nick Crawford, another COTA mechanic, sat in the chair in Mr. Richardson's office, which "went back because one of the wheels or legs was broken." (Nov. 17, 2020 Crawford Aff.) On July 2, 2019, another COTA mechanic, Brian Meyers, attempted to sit in the chair in Mr. Richardson's office. (Oct. 29, 2020 Meyers Aff.) The chair "slid out from beneath [him] because one of the wheels or legs was broken." *Id.*

**{¶ 7}** On July 1, 2019, Mr. Richardson heard "that somebody had an issue with the chair" and requested that the facilities manager dispose of it. (Nov. 18, 2020 Richardson Dep. at 7.) When he left work that day, he "noticed the chair was by the dumpster." *Id.* Mr. Richardson did not witness Nick Crawford or Brian Meyers' attempts to sit in the chair. *Id.* at 7, 10. After Mr. Haddox fell, Mr. Richardson "personally picked the chair up and threw it in the dumpster." *Id.* at 10. He did not know how the chair had reappeared in his office after seeing it by the dumpster the day before. *Id.* at 12.

**{¶ 8}** Mr. Haddox filed suit against COTA on July 2, 2020, alleging an intentional tort claim against his employer.[3] The claim alleged that COTA "acted with deliberate intent to cause injury" to him by "among other things, deliberately exposing [him] to a known risk, to wit, the chair that another employee had previously fallen out of and had subsequently been discarded." (Sept. 3, 2020 Am. Compl. at ¶ 68-69.) COTA filed for summary judgment on April 2, 2021 and the trial court granted the motion on September 23, 2021.

**{¶ 9}** Mr. Haddox appealed and asserts the following assignment of error:

> The trial court erred when it granted summary judgment in favor of, Central Ohio Transit Authority ("COTA" or "Appellee") because genuine issues of fact exist that could lead a reasonable jury to find that the COTA acted with a specific or deliberate intent to cause injury to Appellant Steven Haddox ("Steve" or "Appellant.")

---

[3] Mr. Haddox originally alleged a number of claims against COTA in the complaint and an amended complaint but stipulated to or abandoned all of them except the intentional tort claim in the course of litigation. (Sept. 23, 2021 Decision & Entry Granting Def.'s Mot. for Summ. Jgmt. at 1, fn.1.)

## II.    Standard of Review

{¶ 10} An appellate court applies a de novo standard when reviewing a ruling on a motion for summary judgment under Civ.R. 56. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24. Thus, we must "apply the same standard as the trial court" when it ruled on appellees' motion. *Id.* Under Civ.R. 56(C), a court must enter summary judgment if the evidence supporting the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A summary judgment shall not be rendered unless it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." *Id.*

## III.    Analysis

{¶ 11} Mr. Haddox's sole surviving claim on appeal is an intentional tort claim against COTA. When "an employee seeks damages resulting from an act or omission committed by the employer with the intent to injure, the claim arises outside of the employment relationship, and the workers' compensation system does not preempt the employee's cause of action." *Cincinnati Ins. Co. v. DTJ Ents., Inc.*, 143 Ohio St.3d 197, 2015-Ohio-843, ¶ 7, citing *Brady v. Safety-Kleen Corp.*, 61 Ohio St.3d 624 (1991), paragraph one of the syllabus. However, the General Assembly limited the common law cause of action for an employee seeking redress from an employer for an intentional harm by passing R.C. 2745.01. *See Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027 (detailing the history of the General Assembly's attempts to codify employer intentional tort claims and holding that the current iteration, R.C. 2745.01, was constitutional). The statute provides:

> (A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

{¶ 12} Mr. Haddox argues that the grant of summary judgment should be reversed because the trial court "improperly weighed the evidence, judged the credibility of witnesses, selected among reasonable inferences, and did not view the evidence most strongly in" his favor. (Brief of Appellant at 13.) More specifically, he argues that the other incidents of employees falling out of the chair and Mr. Carter's "joke" when asking him to sit "raise[] an inference [that] COTA intended for someone to fall from" it. *Id.* at 15-16. Acknowledging that "a joke does not necessarily imply an intent to injure," Mr. Haddox nevertheless believes that the "back-to-back incidents" before his fall raise the "reasonable inference" that COTA's actions created a "substantial certainty of harm." *Id.* at 16-17. Based on a number of Mr. Richardson's statements, including his claim that he asked for the chair to be removed, Mr. Haddox asserts that it "is reasonable to infer" that COTA had "knowledge of the dangerous [condition]" of the chair. *Id.* at 18. Mr. Haddox also believes that the trial court improperly credited Mr. Richardson's deposition testimony and assertion that he had asked for the chair to be thrown out.[4] *Id.* at 19-20. Finally, citing *Head v. Reilly Painting & Contracting, Inc.*, 8th Dist. No. 101718, 2015-Ohio-688, and *Travis v. Dreis & Krump Mfg. Co.*, 453 Mich. 149 (1996), a case applying the Michigan intentional tort statute, Mr. Haddox claims that the "critical question" of COTA's intent should be framed as whether it "knew the circumstances were such that some injury would occur." *Id.* at 22-26.

{¶ 13} Mr. Haddox's arguments rely on a fundamental misunderstanding of what he must prove to show COTA's intent under R.C. 2745.01. In particular, any claim brought under the statute purporting to rely on evidence showing that an employer acted "with the

---

[4] Mr. Haddox also believes that the trial court "failed to draw an adverse inference based on the fact that COTA did not produce exculpatory evidence of its intent." (Brief of Appellant at 21.) He heard mention of a video recording that "may have been sufficient to show COTA did not act with intent." *Id.* This video never surfaced during discovery. COTA did not have the burden of producing exculpatory evidence of its intent to show that it was entitled to summary judgment, only that the undisputed evidence in the record did not prove Mr. Haddox's intentional tort claim. *See* Civ.R. 56(C). Furthermore, Mr. Haddox stipulated to the dismissal of his spoliation of evidence claim. (Jan. 7, 2021 Stip.) He is not entitled to an adverse inference arising from his own speculation about the content of non-existent evidence.

belief that the injury was substantially certain to occur" must satisfy its definition of "substantially certain." Because the statute expressly defines "substantially certain," the plaintiff may not rely on common law explanations of that phrase or any colloquial meaning it invokes. R.C. 2745.01(B) states: "As used in this section, 'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." The Supreme Court of Ohio endorsed the following explanation of the definition:

> When we consider the definition of "substantial certainty" it becomes apparent that an employee does not have two ways to prove an intentional tort claim as R.C. 2745.01(A) suggests. The employee's two options of proof become: (1) the employer acted with intent to injure or (2) the employer acted with deliberate intent to injure. Thus, under R.C. 2745.01, the only way an employee can recover is if the employer acted with the intent to cause injury.

*Kaminski v. Metal & Wire Prods. Co.*, 175 Ohio App.3d 227, 2008-Ohio-1521, ¶ 31 (7th Dist.)

{¶ 14} The Supreme Court "agree[s]" with this interpretation. *Kaminski* at ¶ 56 (reversing the lower court's decision but stating that it "agree[s] with the court of appeals that the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts only when an employer acts with specific intent to cause an injury"). To be sure, the wording of the statute has been criticized. *See Rudisill v. Ford Motor Co.,* 709 F.3d 595, 602-03 (6th Cir.2013) (describing R.C. 2745.01 as "a statute at war with itself" because "what appears at first glance as two distinct bases for liability is revealed on closer examination to be one and the same"). "The upshot is that tort-law remedies for workplace injuries in Ohio are limited to those resulting from the employer's deliberate intent to injure." *Id.*

{¶ 15} Mr. Haddox's reference to evidence in the record of the reappearance of the chair created, at best, an inference of knowledge of substantial certainty of harm. Given that R.C. 2745.01 expressly requires proof that an employer acted with deliberate intent to injure, this evidence does not resuscitate his intentional tort claim. Mr. Haddox even stated in his deposition that he did "not believe that anybody would try to hurt [him]." (Haddox Dep. at 38.) There was no evidence in the record from which a reasonable jury might

conclude that COTA intended to injure him. Once COTA demonstrated as much to the trial court, the burden shifted to Mr. Haddox to "set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Because he failed to do so, the trial court did not err by granting summary judgment in favor of COTA.

{¶ 16} Mr. Haddox claims that the trial court failed to construe the evidence in his favor because it improperly credited Mr. Richardson's statements. But Mr. Haddox points to no contradiction between his deposition and that of Mr. Richardson that would require, for purposes of summary judgment, construction in his favor. *See Smathers v. Glass*, __Ohio St.3d.__, 2022-Ohio-4595, ¶ 32 ("When factual ambiguities exist, inferences must still be resolved in favor of the nonmoving party."). Even if we discredit Mr. Richardson's assertion that he asked for the chair to be thrown out, the lack of evidence to demonstrate COTA's deliberate intent to harm is still fatal to Mr. Haddox's claim.

{¶ 17} Finally, given that R.C. 2745.01 is unambiguous and the Supreme Court has explained its application at length in *Kaminski*, we decline to apply Michigan caselaw or its intentional tort statute to Mr. Haddox's claim. Nor does *Head v. Reilly Painting & Contracting, Inc.*, 8th Dist. No. 101718, 2015-Ohio-688, the other case Mr. Haddox cites, support his assertion that the trial court erred. In *Head*, the Eighth District granted summary judgment in favor of an employer on an employee's intentional tort claim under R.C. 2745.01 and, applying *Kaminski*, recognized that the statute's "two definitions were essentially the same" standard of intent. *Id*. at ¶ 13. There, even "a deliberate decision not to use a piece of safety equipment" was insufficient to "show a specific intent to cause an injury. To find otherwise would reinstate the past employer intentional tort paradigm that the legislature so clearly rejected." *Id*. Mr. Haddox's claim suffers from a similar dearth of evidence to demonstrate intent.

## IV.    CONCLUSION

{¶ 18} For the foregoing reasons, the sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____