Ray V. SHELTON, et al., Plaintiffs,

v.

UNITED STATES STEEL CORP., et al., Defendants.

Civ. No. C–1–86–0740.

United States District Court,
S.D. Ohio, W.D.

April 3, 1989.

Allen & Payne, Ironton, Ohio, for plaintiffs.

Gerald Rapien, Cincinnati, Ohio, Matthew Cairone, Pittsburgh, Pa., for defendants.

### ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on defendant United States Steel Corporation's motion for summary judgment (doc. no. 34); plaintiffs' opposing memorandum (doc. no. 35); and defendant's reply memorandum (doc. no. 36). For the reasons stated below, defendant's motion is hereby GRANTED.

### *Procedural Background*

Plaintiffs Ray Shelton and Betty Shelton originally filed this action in the Scioto County, Ohio Court of Common Pleas against defendant United States Steel Corporation (U.S. Steel) and two additional defendants. The case was subsequently removed to this Court. U.S. Steel is the only remaining defendant.

The Court has carefully examined the record in this case. In accordance with Fed.R.Civ.P. 52, the Court does set forth its Findings of Fact, Opinion, and Conclusions of law.

### *Findings of Fact*

(1) At all relevant times, plaintiff Ray Shelton was employed by U.S. Steel at its Chemical Division Plant in Haverhill, Ohio as a general foreman.

(2) On July 19, 1984, plaintiff was injured at work when he was sprayed with a chemical mixture, including phenol, hydrochloric acid, and bisphenol, which is used in the manufacture of high grade plastics.

(3) The accident occurred in a section of the plant known as the BPA unit where bisphenol—A is produced.

(4) The processing equipment in the BPA unit consists of eight reactor vessels lineally connected by a series of pipes through which a chemical mixture known as "slurry" flows. The bottoms of the reactors are located approximately thirty feet above the floor of the building in which they are located. Several feet below the bottom of each reactor is a walkway which allows employees access to valves and controls at the bottom of the reactor.

(5) From the bottom of a reactor known as R–101 an 8–inch diameter pipe (slurry line) extends downward to a pump on the floor below. Slurry flows through the pipe when the pump is activated and the main valve at the bottom of the reactor is open. The main valve is connected to the pipe by an expansion joint consisting of flexible teflon bellows with a steel flange at each end.

(6) The slurry line was constructed in the late 1970's but was not placed into operation until approximately two months before plaintiff's accident.

(7) Upon arriving at work on the morning of the accident, plaintiff learned that there was a problem with the flow in R–101's slurry cooling system. Plaintiff discussed the problem with other company personnel and hypothesized as to what the problem might be.

(8) Plaintiff and another worker went to the walkway beneath R–101 and called for a pipefitter to assist in removing an inspection plate from the valve on the reactor to check the valve indicator. While waiting for the pipefitter, plaintiff decided to verify that the 8–inch pipe was empty as he had been informed by other employees. The procedure used in doing so was to inject pressurized steam into the slurry line through a valve between the main valve and the expansion joint. Plaintiff requested his co-worker Terry Montgomery to open valves near the pump to allow the steam that was to be injected to escape.

(9) When Montgomery gave a signal that the valves were open, plaintiff partially

opened the steam valve on the reactor to allow steam to flow into the slurry line. While plaintiff was waiting for the steam to escape, the expansion joint ruptured, spraying plaintiff and other employees with the chemical mixture that was in the supposedly empty slurry line.

(10) Plaintiff was hospitalized for a period of approximately two weeks following the accident.

## II. Claims of the Parties

Plaintiffs present the following claims for relief: (1) plaintiff Ray Shelton was severely injured as a result of negligent, willful, wanton and/or intentional actions of defendant, which included the installation of a higher relief pressure disk that permitted the employer to operate the chemical reactor above normal design limits and the failure of engineers to perform duties regarding the chemical reactor in a proper manner; (2) defendant's agents negligently, willfully, wantonly and intentionally applied excessive steam pressure to a chemical line without following proper safety procedures, which resulted in said line rupturing and spraying plaintiff with dangerously high levels of chemicals; (3) defendants negligently and or willfully failed to provide protective shields or devices to protect employees from failure of lines and expansion joints and failed to warn employees of resultant dangerous conditions, despite the fact that defendant knew the risk of injury to workers and employees was great and substantially certain to occur as a result of its actions; (4) defendant negligently and/or intentionally failed to provide properly functioning safety showers and negligently failed to maintain a fully equipped first aid station; and (5) defendant intentionally failed to report the accident and plaintiff's injury to the proper authorities.

Defendant claims that it is entitled to summary judgment because the undisputed facts do not satisfy the three elements of an intentional tort as set forth in the governing Ohio case law.

## Opinion

The summary judgment procedure under Federal Rule of Civil Procedure 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting, First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (*citing Cities Service*, 391 U.S. at 288–289, 88 S.Ct. at 1592). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service*, 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

The issue presented in this case is whether defendant's alleged acts and omissions may be characterized as an intentional tort

so as to allow plaintiff to recover damages for any injuries resulting from such acts and omissions. While Ohio law does not preclude an employee from recovering damages at common law against his employer for an intentional tort, *Jones v. VIP Development Co.*, 15 Ohio St.3d 90, 94, 472 N.E.2d 1046 (1984), it does not follow that every industrial injury is thus compensable. If an injury suffered at the workplace is not intentionally inflicted, the employee's sole recourse is through the Worker's Compensation system.[1]

The common law definition of intentional tort set forth in *Jones* and clarified in *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1988) governs this case.[2] An intentional tort as defined at common law is an act committed with the specific intent to injure another or with the belief that such injury is substantially certain to occur. *Jones*, 15 Ohio St.3d at 95, 472 N.E.2d 1046. In order to be held liable for an intentional tort, an employer must have known or believed that its actions were substantially certain to result in the harm suffered by an employee. *Id.*

The elements that must be established in order to prove the requisite intent for an intentional tort on the part of an employer are (1) knowledge by the employer of the existence of a dangerous process, condition, procedure or instrumentality within its business operation; (2) knowledge by the employer that if its employees are subjected to the dangerous process, condition, procedure or instrumentality, harm to them would be a substantial certainty; and (3) that the employer under such circumstances and with such knowledge did act to require the employee to continue performing his employment tasks. *Van Fossen*, 36 Ohio St.3d at 116, 522 N.E.2d 489.

The proof required to establish the requisite intent is beyond that required to prove

negligence or recklessness. *Id.* at 117, 522 N.E.2d 489. The *Van Fossen* court described the distinction as follows:

When the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. *Id.*

The Court cautioned that mere knowledge and appreciation of a risk that falls short of substantial certainty is not intent. *Id.*

Proof of the actual or subjective intent of the actor to accomplish the resulting harm is not required. *Id.* Such intent may be inferred from the employer's conduct and surrounding circumstances. *Jones*, 15 Ohio St.3d at 95, 472 N.E.2d 1046.

■ Upon careful review of the record, the Court finds that plaintiffs have failed to set forth specific facts showing that there is a genuine issue for trial. The sole evidence plaintiffs have submitted in support of their claims is an affidavit of plaintiff Ray Shelton. In his affidavit, plaintiff states that on the morning of the accident, he "volunteered" to help his co-workers determine why the slurry cooler was not operating. Plaintiff states that he has never been informed by his superiors that he was responsible for the slurry cooler. Plaintiff hypothesizes that the accident resulted when condensate added to the slurry

---

1. The law set forth in Jones was codified subsequent to the date plaintiff instituted this lawsuit. Ohio Revised Code Ann. § 4121.80 (Page 1987) allows an employee to receive workers compensation benefits under O.R.C. Chapter 4123 for death or injury caused by an intentional tort of his employer and to bring a cause of action against his employer for an excess of damages

over the amount received or receivable under Chapter 4123.

2. O.R.C. § 4121.80(G)(1) also defines an intentional tort. However, that definition does not apply to plaintiffs' claims since their cause of action arose prior to the effective date of the statute. *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St.3d 135, 138, 522 N.E.2d 477 (1988).

line by Terry Montgomery met with steam plaintiff had fed into the line and exerted a hydraulic force great enough to cause the weakest point of the system, the expansion joint, to fail. Plaintiff states that the expansion joint had been subjected to damaging atmospheric vapors since its installation on or about 1976.[3] He asserts that he believes if defendant had replaced this expansion joint "as they did all others", the expansion joint would not have ruptured. Plaintiff alleges that expansion joints on other units had "failed" on unspecified dates injuring three employees on one occasion and one employee on another. He also states that the R–101 slurry cooler and piping had not been inspected for over a six-year period prior to the accident, although the "Hartford Mandatory inspection sheet"[4] specifies that these units were to be inspected every three years.

Plaintiff further asserts that certain safety precautions were not taken with respect the reactor even though "the French, whose process was used, had informed us that these coolers were very dangerous." Finally, plaintiff alleges that an air-operated valve at the bottom of the reactor had been replaced with a manual air-operated valve which caused plaintiff to be directly under the reactor when the accident occurred. Plaintiff states that this change made it certain that if an accident occurred, injury would most likely result.

Plaintiff's affidavit does not provide specific facts that would permit a jury to return a verdict in his favor. There is no direct evidence that defendant, through its agents or employees, acted with a specific intent to injure plaintiff. Plaintiff conceded at his deposition that he did not know of anyone who intended to injure him (Shelton aff., v. I, pg. 91). Therefore, an intent to harm plaintiff must be inferred from defendant's acts or omissions and the surrounding circumstances. Neither the undisputed facts nor the facts alleged by plaintiff, if accepted as true, support such an inference.

First, the record is devoid of evidence that suggests defendant had knowledge of a dangerous process, condition, procedure or instrumentality within its business operation. Plaintiff alleges that defendant's agents had been warned by unspecified individuals that the slurry cooling system was dangerous. However, he offers no evidence of what such dangers were. The mere fact that defendant's manufacturing process involved the existence of dangers does not automatically classify defendant's acts or omissions as an intentional tort, even if management failed to take corrective action or institute safety measures. *See Van Fossen*, 36 Ohio St.3d at 117, 522 N.E.2d 489.

Furthermore, there is no evidence that defendant knew the actions taken by plaintiff and his co-workers would result in a rupture of the expansion joint or any other type of equipment failure, or even that defendant sanctioned its employees' actions preceding the accident. Plaintiff indicated at his deposition that the only improper act or omission that may have caused his injury was possible plugged bleeder valves on the reactor, but he could not surmise who might be at fault with regard to the accident. (Shelton dep., v. I. pp. 89–90). Plaintiff alternatively hypothesizes in his affidavit that his co-worker Montgomery may have erroneously added condensate to the slurry line, but this hypothesis, if substantiated, at most gives rise to a claim of negligence or recklessness. It does not permit an inference that the employer knew the expansion joint, the slurry cooler, or the reactor would malfunction in a manner similar to what occurred.

Finally, there is no evidence that either the expansion joint or slurry cooler were dangerous instrumentalities. Plaintiff suggests that the expansion joint may have been misaligned when installed, but there is no evidence that defendant was aware of

---

**3.** In his deposition, plaintiff testified that he had no knowledge of when the expansion joint was installed.

**4.** Plaintiff gives no indication of what this sheet is and has not attached a copy of same to his memorandum as required under Fed.R.Civ.P. 56(e).

this possible fault. Plaintiff also makes vague allegations that the expansion joint had been exposed to damaging atmospheric fumes, but offers no evidence that the joint had actually been damaged by such exposure. (Shelton dep., v. II, pg. 8). Plaintiff also alludes to the fact that the slurry cooler had not been inspected for over six years. This allegation, standing alone or considered in conjunction with the remaining evidence, does not support an inference that the equipment posed danger to defendant's employees of which defendant was aware. This is particularly true since the slurry cooler had been in actual operation for only a brief period of time before plaintiff's accident, rather than throughout the six-year period to which plaintiff refers.

For the foregoing reasons, the first element of an intentional tort claim cannot be satisfied in this case.

Assuming, *arguendo*, that defendant knew the expansion joint was a dangerous instrumentality, plaintiff offers no specific facts to support a finding that defendant knew if an employee was exposed to an expansion joint as was plaintiff that harm was substantially certain to result. Plaintiff alleges that expansion joints on other pieces of equipment in the plant had failed. Evidence of other incidents tending to show that the equipment in question was a dangerous instrumentality may establish knowledge on the part of an employer. *See Van Fossen*, 36 Ohio St.3d at 118, 522 N.E.2d 489; *Pratt v. National Distillers & Chem. Corp.*, 853 F.2d 1329 (6th Cir.1988); *Kunkler*, 36 Ohio St.3d at 139–40, 522 N.E. 2d 477. However, plaintiff does not specify the dates or approximate dates on which the failures occurred, nor does he describe the nature of these failures or the resultant injuries.[5] Therefore, it is not clear whether these accidents occurred prior to plaintiff's accident and whether they bore any resemblance to the expansion joint failure resulting in his injury. Accordingly, these alleged incidents are not probative of defendant's knowledge of any danger posed to plaintiff by the expansion joint. See *Pariseau v. Wedge Products, Inc.*, 36 Ohio St. 3d 124, 127, 522 N.E.2d 511 (1988).

Furthermore, the record does not disclose the cause of the expansion joint rupture. Plaintiff variously attributes the accident to several possible causes, including misalignment of the expansion joint, plugged valves, and erroneous acts on the part of Terry Montgomery. In view of these divergent theories and the absence of any concrete evidence as to the cause of the rupture, one cannot infer that the employer knew or believed that harm was substantially certain to occur as a result of a particular process or instrumentality to which plaintiff was exposed. This is particularly true since the record establishes that plaintiff was very knowledgeable about operations in the BPA unit, yet does not profess to have known before the accident of specific dangers substantially certain to result in harm to himself or any other employee in that unit.[6] The record simply does not permit an inference that any individual in defendant's employ was privy to knowledge of this sort that plaintiff himself lacked. Therefore, plaintiff cannot establish the second element of an intentional tort claim.

Finally, the evidence submitted by plaintiff affirmatively establishes that defendant did not require plaintiff to continue performing his employment duties despite knowledge that harm was substantially certain to occur. Plaintiff has conceded that the slurry cooler was not his responsibility and that he "volunteered" to assist with the problem in the cooler the morning of his accident. Plaintiff apparently perceived no danger in acting as he did, and there in no indication in the record that anyone else in defendant's employ was aware of any danger. Under these unique

**5.** In contradiction to his sworn statement in his affidavit, plaintiff testified at his deposition that he was aware of no other expansion joint ruptures leading to injuries. (Shelton dep., v. I, pp. 96–97).

**6.** Plaintiff concurs in defendant's statement that as of the date of the accident, "there was no U.S.S. [U.S. Steel] employee more familiar with or knowledgeable about the operational aspects of the BPA unit than Ray Shelton." (Doc. no. 35, plaintiff's opposing memorandum, pg. 7).

facts, the third element of an intentional tort is clearly lacking.

In sum, the evidence submitted by plaintiffs may support a claim of negligence or recklessness against defendant. However, such evidence is insufficient to permit a reasonable trier-of-fact to conclude that defendant knew or believed that harm was substantially certain to occur as a result of the chemical process and equipment involved. For these reasons, plaintiffs' intentional tort claim stemming from the rupture of the expansion joint must fail.

■ Plaintiff also brings intentional tort claims based on a malfunction in the safety shower and a shortage of adequate first aid supplies following the accident. Plaintiff testified at his deposition that the safety shower which he used immediately after the accident worked for three to four minutes before the water slowed to a trickle, and that he believed the water supply diminished because so many showers were in use at one time. (Shelton dep., v. I, pp. 113–17). Plaintiff disavowed any knowledge of prior malfunctions in the safety showers. (Shelton dep., v. I, pg. 120). Plaintiff testified that Catalytic Stearns, an original defendant to this action who is no longer in the case, maintained the safety showers and that the showers were inspected weekly. If a problem was discovered, a work order was normally issued to Catalytic, who made the repairs. (Shelton dep., v. I, pg. 119). These facts do not support a claim that defendant knew of a problem with the safety showers and believed that harm was substantially certain to occur as a result of such a problem.

Plaintiff also claims that alcohol was applied to him following the accident, whereas a different type of alcohol, poly–300, should have been applied. (Shelton dep., v. II, pg. 64). Plaintiff acknowledged at his deposition that at the time of his accident, alcohol was the approved method of treating phenol burns. (Shelton dep., v. II, pg. 65). However, he believes that this treatment was improper because he and defendant knew that the alcohol used tended to carry phenol through the body system more readily. (Shelton dep., v. II, pg. 66). Plaintiff also claims that defendant did not have adequate resuscitation equipment and an adequate number of sterile blankets and clean basket stretchers available. Plaintiff states in his deposition that although he was given oxygen at the scene, he has been told that the oxygen "ran out" after being administered for an unspecified period of time. (Shelton dep., v. II, pp. 68–69).

As is apparent from plaintiff's own testimony, he was administered first aid after the accident. He alleges no facts which suggest that he was harmed by the alleged deficiencies in such treatment or that his employer knew that harm would be substantially certain to result from the aid administered or alleged lack of first aid supplies. Plaintiff's allegations do not support an inference that defendant committed an intentional tort with respect to the provision of first aid.

### Conclusions of Law

(1) Plaintiffs may recover damages under common law for the injuries they allege only if defendant committed an intentional tort: otherwise, their sole recourse is through the Ohio workers' compensation system. *Jones v. VIP Development Co.*, 15 Ohio St. 3d 90, 472 N.E.2d 1046 (1984).

(2) Plaintiffs' cause of action is governed by the definition of intentional tort set forth in *Jones* and clarified in *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1988).

(3) An intentional tort is an act committed with the specific intent to injure another or with the belief that such injury is substantially certain to occur. *Jones*, 15 Ohio St.3d at 95, 472 N.E.2d 1046.

(4) Based on the undisputed facts, and accepting plaintiff's internally consistent allegations in his affidavit and deposition as true, a reasonable jury could not find that defendant committed an intentional tort against plaintiff Ray Shelton.

In accordance with the foregoing, defendant's motion for summary judgment as to all claims in the complaint is GRANTED.

IT IS SO ORDERED.