OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, Robert E. Tablack, administrator of the estate of Edward J. Popovich, appeals the decision of the Mahoning County Court of Common Pleas that granted summary judgment to Defendants-Appellants, the Mahoning County Board of Commissioners, the Mahoning County Engineer, and Richard Marsico in his position as Mahoning County Engineer (collectively "Mahoning County") and Michael Cvengros, in Tablack's intentional tort actions. On appeal, Tablack argues that he demonstrated that there were genuine issues of material fact in each of those claims. However, Tablack has failed to demonstrate that either Mahoning County or Cvengros had a specific intent to injure him or that either defendant was substantially certain that an injury would occur if Popovich was exposed to the dangerous condition. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 2} Popovich was employed by the Mahoning County Engineer's office as a laborer. On April 5, 2005, he was assigned as part of a crew to patch potholes on Sharrott Road in Mahoning County. One member of the crew drove the dump truck containing the material used to fill the potholes, two people shoveled the material into the potholed, another person smoothed out that material, and Cvengros was to protect the crew from approaching traffic. In order to do this, Cvengros was to operate a shadow vehicle, which is a truck containing warning devices, behind the crew working in the roadway.
 {¶ 3} When the crew began repairing Sharrott Road, they were too near State Route 165 for the shadow vehicle to operate, so the vehicle was parked in a nearby driveway and Cvengros acted as a flagman to direct traffic around the crew. Once the crew had moved a sufficient distance down the road, Cvengros retrieved the shadow vehicle. As he drove the vehicle up toward the crew working in the roadway at about five miles per hour, Cvengros looked behind himself for approaching traffic. When he looked back around, he found that he was very close to the crew. Cvengros tried to stop the vehicle, but his foot slipped off the brake. The vehicle then hit some of the crew, including Popovich, who was pinned between the dump truck and shadow vehicle. *Page 2 
Popovich died the next day as a result of the injuries he received.
 {¶ 4} Tablack, as administrator of Popovich's estate, filed a complaint against Mahoning County and Cvengros, alleging that each of them committed an intentional tort against Popovich. After discovery, defendants moved for summary judgment, to which Tablack responded. The trial court granted defendants' motion for summary judgment, calling the incident an unintentional accident.
 Standard of Review {¶ 5} Tablack argues the following four assignments of error on appeal:
 {¶ 6} "The trial court erred in granting summary judgment to Defendants where the only basis asserted in the combined motion for summary judgment were claims of immunity under the Workers' Compensation Act."
 {¶ 7} "The trial court erred in granting summary judgment to Mahoning County where there was credible evidence before the court satisfying all 3 prongs of the Fyffe test."
 {¶ 8} "The trial court erred in granting summary judgment to Cvengros where there was evidence before the court that his conduct in operating the shadow vehicle was beyond reckless and rose to a level of intent that constituted actual malice."
 {¶ 9} "The trial court erred in granting summary judgment to Defendants based on its finding that the accident that led to the death of Plaintiff's decedent was `unintentional and that the circumstances that led to the accident were not substantially or virtually certain to result in injury."
 {¶ 10} Each of these assignments of error challenges the trial court's decision to grant summary judgment both to Mahoning County and Cvengros. When reviewing a trial court's decision to grant summary judgment, we apply the same standard as the trial court and, therefore, engage in a de novo review. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829. Under Civ. R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v. Shaffer,90 Ohio St.3d 388, 390, 2000-Ohio-0186. *Page 3 
 {¶ 11} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-0107. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. "In order to overcome an employer-defendant's motion for summary judgment on an intentional tort claim, the plaintiff must set forth specific facts showing there is a genuine issue as to whether the employer committed an intentional tort." Burgos v. Areway,Inc. (1996), 114 Ohio App.3d 380, 383.
 {¶ 12} Furthermore, the arguments in these assignments of error are repetitive as they are all aimed at two basic decisions: that neither Popovich's employer nor co-employee committed an employment-related intentional tort against Popovich. Rather than addressing each assignment of error in the order presented by Tablack, we will review the propriety of each of these decisions in turn.
 Summary Judgment to Mahoning County {¶ 13} The workers' compensation statutes provide employees with the primary means of compensation for injury suffered in the scope of employment, but an employee may institute a tort action against the employer when the employer's conduct is sufficiently "egregious" to constitute an intentional tort. Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172. When an employer's conduct is sufficiently egregious to constitute an intentional tort, the employer's act occurs outside the scope of employment and, thus, the employee's recovery is not limited to the workers' compensation provisions. Blankenship v. Cincinnati MilacronChemicals, Inc. (1982), 69 Ohio St.2d 608, 613, footnote 7.
 {¶ 14} Tablack argues that Mahoning County committed an intentional tort against Popovich. In order to recover against an employer for an intentional tort, an employee must prove the three elements the Ohio Supreme Court described in Fyffe v. Jeno's, Inc. *Page 4 
(1991), 59 Ohio St.3d 115.[1]
 {¶ 15} "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at paragraph one of the syllabus.
 {¶ 16} The primary concern in any case where an employee is claiming his employer committed an intentional tort against him is whether the employer, "through its policies and conditions of employment, placed [the employee] in a position where he was subjected to a `dangerous process, procedure, instrumentality or condition' and harm was substantially certain to follow." Gibson v. Drainage Products,Inc., 95 Ohio St.3d 171, 2002-Ohio-2008, at ¶ 27. "[I]f the injured employee fails to present sufficient evidence to support any one of the three requirements, summary judgment in favor of the employer is appropriate. Hunter v. Interpak, Inc., 11th Dist. No. 2001-L-198, 2002-Ohio-7149, at ¶ 14.
 {¶ 17} In this case, Tablack argues that there is a genuine issue of material fact regarding each of Fyffe's prongs and Mahoning County does not concede any of those arguments. We will address each of these prongs in turn.
 Knowledge of a Dangerous Condition {¶ 18} After reviewing his appellate brief and memorandum opposing summary judgment, it appears that Tablack argues that there were two dangerous conditions at the jobsite where Popovich was killed and that Mahoning County knew about these dangerous conditions. First, Tablack points to the fact that Cvengros was acting as both *Page 5 
flagman and operator of the shadow vehicle and argues that this was dangerous since he was required to watch for approaching vehicles while he was operating the safety vehicle. Second, Tablack criticizes the fact that the shadow vehicle was allowed to move while the laborers were working in the road in front of the vehicle without any safeguards to ensure that the vehicle would not hit the laborers.
 {¶ 19} In order to satisfy the first prong of the Fyffe test, the plaintiff must show there was a dangerous process and the employer had actual knowledge of the consequences of the exact dangers which ultimately caused the injury. Gibson at ¶ 28; Sanek at 172; Dailey v.Eaton Corp., 138 Ohio App.3d 575, 582, 2000-Ohio-1754. "`[D]angerous work must be distinguished from an otherwise dangerous condition within that work. It is the latter of which that must be within the knowledge of the employer before liability could attach.'" Dailey at 582, quotingNaragon v. Dayton Power Light Co. (Mar. 30, 1998), 3rd Dist. No. 17-97-21. Injuries that occur in the scope of employment are, by definition, not intentional torts. Id.
 {¶ 20} The mere fact that defendant's process involved the existence of dangers does not automatically classify defendant's acts or omissions as an intentional tort, even if management failed to take corrective actions or institute safety measures. Shelton v. U.S. Steel. Corp.
(S.D.Ohio, 1989), 710 F.Supp. 206, 210. Some dangers may "fairly be viewed as a fact of life of industrial employment" and an employer has not committed an intentional tort when an employee is injured by one of those dangers. Van Fossen v. Babcock Wilcox Co. (1989),36 Ohio St.3d 100, 116. A dangerous condition exists when the danger "falls outside the `natural hazards of employment,' which one assumes have been taken into consideration by employers when promulgating safety regulations and procedures." Youngbird v. Whirlpool Corp. (1994), 99 Ohio App.3d 740,747.
 {¶ 21} "[M]any employment situations involve obvious dangers incident to employment and that the purpose of the Workers' Compensation Act is to provide an employee with compensation for injury suffered by reason of a danger necessarily incident to his employment. An intentional tort action, conversely, allows an employee to recover for injuries suffered that are not caused by a danger necessarily incident to his employment. For example, operating dangerous machinery may be a necessary incident *Page 6 
of an employment situation, but operating that dangerous machinery without proper safety mechanisms may not constitute a necessary incident of the employment. See Fyffe. In the former case, recovery likely could be had under the Workers' Compensation Act. In the latter case, recovery may be possible under the theory that the employer's conduct in failing to provide adequate safety mechanisms constituted an intentional tort."Goodin v. Columbia Gas of Ohio, Inc. (2000), 141 Ohio App.3d 207, 216.
 {¶ 22} Moreover, "the `reasonable person' standard for determining negligence or recklessness is not used in this process. The fact that the employer might or should have known that if it required the employee to work under dangerous conditions the employee would certainly be injured is not enough to establish a case for intentional tort. Rather, the determination turns on whether the plaintiff alleges facts showing the employer possessed actual or constructive knowledge of the dangerous situation." Caldwell v. Petersburg Stone Co., 7th Dist. No. 02CA8, 2003-Ohio-3275, at ¶ 41.
 {¶ 23} Thus, the scope of this court's inquiry must focus on whether Tablack presented evidence which could prove that this was an injury associated with inherently dangerous work outside the scope of Popovich's employment and Mahoning County knew of this danger.Dailey at 582; Moebius v. Gen. Motors Corp., 2d Dist. No. 19147, 2002-Ohio-3918, ¶ 29; Long v. International Wire Group, Inc., 3rd Dist. No. 3-2000-11, 2000-Ohio-1751.
 {¶ 24} As stated above, Tablack argues that there were two dangerous conditions at the site of the accident: the fact that Cvengros was acting as both flagman and shadow vehicle operator and that the laborers were allowed to work in the road while the shadow vehicle was moving. When the evidence is viewed in the light most favorable to Tablack, he is right about each of these conditions.
 {¶ 25} Tablack filed the affidavit of an accident reconstruction expert, Henry Lipian, which stated, among other things, that it was needlessly dangerous to have the same person (Cvengros) in charge of both watching for approaching traffic and operating a motor vehicle close to people who were working immediately in front of him in the street. Furthermore, some of the Mahoning County employees acknowledged that having the duties of flagger and shadow vehicle operator in the same person is more dangerous *Page 7 
than having those duties performed separately. For instance, Robert Yankle, the Mahoning County Engineer's safety supervisor testified that it was a "dangerous situation" to have someone watching the road behind him for approaching cars while operating a shadow vehicle.
 {¶ 26} Such a conclusion makes a certain amount of sense. People working in a roadway run the risk of being hit and injured by a passing vehicle. If a person's sole task is to look out for passing vehicles and warn those vehicles about the people working in the road, the workers' safety will be increased. If that person, on the other hand, has other duties as well, then there is greater risk of injury, since the other job could expose the workers to greater risk. Similarly, if a person operating a shadow vehicle has other duties while operating that vehicle, then the people working in the road will be subject to a greater risk of injury, either from the passing cars or the shadow vehicle.
 {¶ 27} Furthermore, the evidence, when viewed in the light most favorable to Tablack, shows that Mahoning County knew of this dangerous condition. Yankle admitted that Mahoning County allowed some crews to work with the same person acting as both flagman and shadow vehicle operator. In addition, Timothy Heitzenrater, the person operating the dump truck when Popovich was injured testified that the foreman on site would determine whether a flagman was necessary and call his supervisor if another person was needed.
 {¶ 28} Thus, we must conclude, for the purposes of summary judgment, that Mahoning County knew of a dangerous condition in its operations, by allowing the same person to act as both the shadow vehicle operator and flagman.
 {¶ 29} Similarly, we must conclude, for the purposes of summary judgment, that Mahoning County knew that having a crew work between two moving vehicles was a dangerous condition. Michael Phillips, the supervisor over Popovich's crew, and Yankle both testified that they knew that the safety vehicle was being operated in the roadway while the crew was working in front of it. Furthermore, James Polito, one of the men working with Popovich on the day of the incident, testified that it had been his understanding in the eleven years he had been working with Mahoning County that the crews would be working on the roadway while the dump truck and shadow vehicle were *Page 8 
also being operated on the roadway. Finally, Mahoning County employees acknowledged that they understood that there was some danger in this if one of the vehicles struck one of the crew.
 {¶ 30} Moreover, the danger posed by these vehicles to the crew appears to be a danger which could have been avoided. For example, the men could have been required to step off the road while the vehicles were moving to a new location.
 {¶ 31} Accordingly, we must conclude, for the purposes of summary judgment, that Tablack can show that there is a genuine issue of material fact regarding whether Mahoning County knew of the existence of a dangerous process, procedure, instrumentality or condition within its business operation.
 Substantial Certainty {¶ 32} The second prong of the Fyffe test requires that the plaintiff demonstrate that the employer was substantially certain that an employee would be injured if exposed to the dangerous condition. As both this and other courts have stated, "[t]his is a difficult standard to meet."McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236, 246;Crnarich v. United Foundries, 7th Dist. No. 02 CA 128, 2003-Ohio-4458, ¶ 21;Hunter at ¶ 19.
 {¶ 33} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe at paragraph two of the syllabus.
 {¶ 34} The Ohio Supreme Court described this concept differently inVan Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100.
 {¶ 35} "There are many acts within the business or manufacturing process which *Page 9 
involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort' and therefore an exception, under Blankenship [v. Cincinnati Milacron Chemicals,Inc. (1982), 69 Ohio St.2d 608,] or Jones [v. VIP Development Co.
(1984), 15 Ohio St.3d 90], to the exclusivity of the [Workers' Compensation] Act." Id. at 117.
 {¶ 36} Under the Fyffe test, if a dangerous condition is substantially certain to injure an employee, intent is inferred. Goodin at 218, citingHarasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175. "Thus, the employee need not illustrate that the employer subjectively intended to `accomplish the consequences.'" Id. "What constitutes a `substantially certain' result will vary from case to case based on the facts involved." Richie v. Rogers Cartage Co. (1993),89 Ohio App.3d 638, 644. For instance, evidence of prior accidents or near misses involving the procedure at issue is one factor to be considered when determining whether an injury was substantially certain to occur.Van Fossen at 118; Taulbee v. Adience (1997), 120 Ohio App.3d 11;Moebius v. Gen. Motors Corp., 2d Dist. No. 19147, 2002-Ohio-3918, at ¶ 39. "[W]hile the absence of prior accidents, standing alone, may not be conclusive, it strongly suggests that injury from the procedure was not substantially certain to result from the manner in which the job was performed. Crnarich at ¶ 30.
 {¶ 37} In his appellate brief, Tablack argues that it was substantially certain that Popovich would be injured if he were pinned between the dump truck and shadow vehicle. He also contends that the conditions which Mahoning County allowed to be in place made injury to either the crew or the general public a substantial certainty.
 {¶ 38} Tablack's first argument is meritless. Fyffe's second prong requires that an employee prove that the employer knew with substantial certainty that the employee would be harmed if subjected to the dangerous process, procedure, instrumentality or condition discussed inFyffe's first prong. The shadow vehicle running into the dump truck is not the dangerous condition at issue in this case. Instead, the dangerous *Page 10 
conditions, for the purposes of summary judgment, are Cvengros acting as both flagman and shadow vehicle operator and the crew's presence in the roadway while the vehicles were in motion.
 {¶ 39} Tablack's first argument is analogous to an employee arguing that the employer knew he would be harmed if he were electrocuted, without addressing whether the employer had any reason to suspect that the employee would be electrocuted. Accordingly, it does not matter whether it was substantially certain that Popovich would be injured if struck by the shadow vehicle. Instead, the central question is whether Mahoning County knew with substantial certainty that such an accident would occur if it allowed the dangerous conditions to persist.
 {¶ 40} There is not any evidence in the record supporting a conclusion that there is a genuine issue regarding whether Mahoning County knew that injury to an employee was a substantial certainty if the crew was working in the roadway at the time that both the dump truck and shadow vehicle were moving. According to the testimony of the Mahoning County employees, the crew was employing a standard procedure which had been used for years without incident. This strongly suggests that the danger posed was a "fact of life of industrial employment" and not, therefore, the type of danger which can be compensated for as an employer intentional tort. Van Fossen at 116.
 {¶ 41} Furthermore, Tablack's expert did not give an opinion on whether this procedure was likely to cause injury. The length of time which Mahoning County had used this procedure without incident demonstrates that it did not know with substantial certainty that Popovich would be injured if Mahoning County continued that practice. Since Tablack has failed to offer any evidence on this issue demonstrating a genuine issue of material fact, he cannot recover based on a theory that the crew should not have been working in the roadway while the shadow vehicle was moving.
 {¶ 42} With regard to Tablack's second argument addressing the substantial certainty prong, it once again appears that it is common practice in the Mahoning County Engineer's office to have a member of a work crew act as both flagman and operator of a safety vehicle on the same job when circumstances warrant. For instance, Richard Marisco, the Mahoning County Engineer, testified that he would expect a person *Page 11 
operating a shadow vehicle to operate as a flagman if there was not enough room for the person to safely operate the vehicle. Again, there is no evidence that Mahoning County knew of any accidents or close calls which had occurred because of this procedure in the past.
 {¶ 43} However, Tablack attached an expert's report by Lipian to Lipian's affidavit, which Tablack filed in opposition to the motion for summary judgment. In that report, Lipian criticized Mahoning County's lack of planning, training, and supervision; the requirement that Cvengros act as both flagger and shadow vehicle operator; and Cvengros's operation of the shadow vehicle. He then concluded that Mahoning County "allowed an extremely dangerous situation to exist that constituted a dangerous lack of due care. By knowingly not providing a training program, not providing a supervisor at the scene and not providing for a dedicated flagger the Mahoning County Engineers Office should have known that substantial certainty of injury or death existed within its work environment for its workers and the public."
 {¶ 44} This expert's report does not say that Mahoning County knew with substantial certainty that an employee would be injured if an employee was required to perform the duties of both flagger and shadow vehicle operator, which Tablack must prove in order to establishFyffe's second prong. Instead, he speaks in terms of what Mahoning County "should have" known about the possibility of injury in regard to many conditions in addition to the failure to have a dedicated flagger present at the scene.
 {¶ 45} In many ways, this situation is similar to the one the Twelfth District faced in Teal v. Colonial Stair Woodwork Co., 12th Dist. No. CA2004-03-009, 2004-Ohio-6246. In that case, an employee was injured while using a woodworking machine and sued his employer, Colonial, for an employer intentional tort. Colonial moved for summary judgment and the employee responded with, among other things, the affidavit of an expert in the area of analysis and reconstruction of machine guarding accidents. That expert opined, after reviewing the facts, that "`Colonial knew of a dangerous process, procedure, instrumentality or condition within its business operation' and that Colonial `knew that if [an] employee was subjected to such dangerous process procedure, instrumentality or condition, then harm to the employee would be a substantial certainty.'" *Page 12 
Id. at ¶ 15. Despite this affidavit, the trial court granted Colonial's motion for summary judgment.
 {¶ 46} On appeal, the employee argued that the trial court erred since the expert's affidavit created a genuine issue of material fact, but the appellate court disagreed.
 {¶ 47} "Expert testimony can be used to establish the necessary elements in an employer intentional tort case. However, simply because an expert concludes that an accident is substantially certain to occur does not necessarily establish that element as a legal conclusion. The expert's opinion must create a genuine issue of material fact from a legal standpoint." (Citations omitted) Id. at ¶ 17.
 {¶ 48} According to the Twelfth District, "[t]he evidence in this case established that the shaper had been used at Colonial for over 50 years with no accidents. There were no previous incidents of injuries due to kickback or any other reason. There were no complaints by employees to Colonial that the machine was unreasonably dangerous or that guards should be installed. Teal himself used the machine with no problems for hours before the injury occurred. Teal also testified that he was unsure exactly how the injury occurred. He stated that he did not know what caused the form to kick back, or how his hand went into the machine. * * *
 {¶ 49} "Despite appellants' expert opinion to the contrary, the facts of this case do not rise to the level of substantial certainty that an accident would occur. There is simply no evidence that Colonial knew an injury was substantially certain to occur." Id. at ¶ 18-21; see alsoBurgos v. Areway, Inc. (1996), 114 Ohio App.3d 380, 384 ("An expert report stating that the accident was substantially certain to occur may not be sufficient to prevent summary judgment in favor of the employer on the employee's intentional tort claim.").
 {¶ 50} This case is similar to Teal because both cases demonstrate that the employer had a long history of using the dangerous process or condition in question without an accident or near miss. The only evidence to which Tablack can point to counter this evidence is Lipian's report, which only states that Mahoning County "should have known" that injury was substantially certain to occur. Given these facts, we must conclude that Tablack has not demonstrated a genuine issue of fact regarding whether Mahoning County actually knew that injury was substantially certain to result if an *Page 13 
employee was exposed to this danger. Accordingly, the trial court correctly granted summary judgment to Mahoning County on this issue. This conclusion makes it unnecessary for us to determine whether Tablack has demonstrated a genuine issue of material fact regarding the third prong of Fyffe's test, as failure to establish one of the threeFyffe elements is fatal to an employee's intentional tort claim.Hunter at ¶ 14.
 Summary Judgment to Cvengros {¶ 51} Tablack argues that the trial court also erred when it granted summary judgment to Cvengros, Popovich's co-employee. Under the workers' compensation system, a co-employee is generally immune from a lawsuit based on on-the-job injuries suffered by a co-worker. R.C. 4123.741. This immunity is conditioned upon a determination that the injured employee is entitled to workers' compensation. Thiel v. Allstate Ins.Co. (1986), 23 Ohio St.3d 108.
 {¶ 52} In this case, Cvengros introduced an affidavit from an employee at the Ohio Bureau of Workers' Compensation, which confirmed that Popovich's injury was covered by Mahoning County's workers' compensation coverage and Cvengros was clearly Popovich's co-employee. Thus, Cvengros was entitled to the immunity provided by R.C. 4123.741.
 {¶ 53} However, this immunity does not extend to intentional torts, which by definition do not arise in the course of one's employment.Brady v. Safety-Kleen (1991), 61 Ohio St.3d 624, paragraph one of the syllabus. In order to establish an intentional tort, Tablack must prove that the act was "committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." Jones at paragraph one of the syllabus.
 {¶ 54} Tablack's argument that Cvengros committed an intentional tort against Popovich is that his actions (driving the truck forwards while looking behind him while the crew was in the roadway) were so egregious that they were malicious, rather than reckless. The Ohio Supreme Court has said that courts must refrain from construing the term "intentional tort" too broadly when considering whether a co-employee's conduct is sufficiently egregious to constitute an intentional tort.
 {¶ 55} "If `intentional wrong' is interpreted too broadly, this single exception would *Page 14 
swallow up the entire `exclusivity' provision of the Act, since virtually all employee accidents, injuries, and sicknesses are a result of the employer or a co-employee intentionally acting to do whatever it is that may or may not lead to eventual injury or disease. Thus in setting an appropriate standard by which to measure an `intentional wrong,' we are careful to keep an eye fixed on the obvious: the system of workers' compensation confronts head-on the unpleasant, even harsh, reality — but a reality nevertheless — that industry knowingly exposes workers to the risks of injury and disease." Van Fossen at 115-116, quoting Millison v. E.I. du Pont de Nemours Co. (1985), 101 N.J. 161,177, 501 A.2d 505, 513.
 {¶ 56} In this case, Tablack has presented no real evidence that Cvengros directly intended to injure anyone. This is not a case involving a physical assault, where it can reasonably be inferred that someone punching a victim intended to hurt that victim. Instead, Cvengros was driving a vehicle on the roadway at five miles per hour in an allegedly unsafe manner. There is no reason given in the record, such as animosity toward another co-employee, explaining why Cvengros would want to intentionally injure another member of the crew. Thus, Tablack has not raised a genuine issue regarding whether Cvengros intentionally injured Popovich.
 {¶ 57} Tablack contends that Cvengros should have been substantially certain that someone would be injured if he drove the vehicle slowly forward while watching for traffic behind him. However, a substantial certainty intentional tort only exists when "the actor proceeds despite a perceived threat of harm to others which is substantially certain, not merely likely to occur." Jones at 95.
 {¶ 58} Tablack has not introduced any evidence showing that Cvengros perceived that he was likely to injure any member of the crew, let alone that he perceived that he was substantially likely to injure anyone, when driving the shadow vehicle. All of the evidence shows that Cvengros expected that he could stop the vehicle before hitting anyone. The only thing which stopped him from being able to do so was that his foot slipped off the brake. This is not something that Cvengros could have anticipated ahead of time.
 {¶ 59} Tablack ignores this evidence, placing all of the blame of the accident on *Page 15 
the fact that Cvengros was looking behind him for approaching traffic while driving the shadow vehicle. But while we must view the evidence in the light most favorable to Tablack, this does not mean we can ignore the fact that Cvengros's foot slipped off the brake and that it was this accident which directly lead to Popovich's death.
 {¶ 60} Tablack has not introduced any evidence which demonstrates a genuine issue regarding whether Cvengros committed an intentional tort against Popovich. Accordingly, the trial court properly granted summary judgment to Cvengros on Tablack's claim against him.
 Conclusion {¶ 61} Tablack argues that the trial court erred when it granted summary judgment to Mahoning County and Cvengros. However, Tablack has failed to demonstrate a genuine issue regarding whether either Mahoning County or Cvengros knew with substantial certainty that Popovich or any other employee would be injured on that day. Accordingly, Tablack's assignments of error are meritless and the judgment of the trial court is affirmed.
Donofrio, J., concurs.
Waite, J., concurs.
[1] We recently held that R.C. 2745.01, which attempts to set statutory limits on employer liability for intentional torts and became effective on April 7, 2005, was unconstitutional in Kaminski v. Metal Wire Prods. Co., 175 Ohio App.3d 227, 2008-Ohio-1521, at ¶ 34. Accordingly, we must apply the Ohio Supreme Court's test set forth inFyffe to determine whether Tablack has demonstrated a genuine issue regarding whether Mahoning County committed an employer intentional tort against him. *Page 1